UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TIMOTHY MELTON, ) </br> ) </br> Plaintiff, ) </br> ) </br> vs. ) </br> ) </br> SHEET METAL WORKERS' ) </br> NATIONAL PENSION FUND, ) </br> ) </br> Defendant. ) | 2:13-cv-00178-APG-NJK </br></br></br> **O R D E R** |

Before the Court is the Plaintiff's Motion to Admit one Document to the Administrative Record and Motion to Open Limited Discovery to Authenticate Two Notices Issued by Defendant. Docket No. 23 and 25. The Court has considered the Plaintiff's Motions (#23 and #25), the Defendant's Opposition (#28), and the Plaintiff's Reply (#29).

**BACKGROUND**

Plaintiff Timothy Melton worked as a stainless steel sheet metal welder for 33 years and was an active member of the Sheet Metal Workers' International Association ("SMWIA"). In line with the collective bargaining agreements which covered his employment, Melton made contributions to the Defendant, Sheet Metal Workers' National Pension Fund ("Fund"), until he retired in June 2006. At that time, Melton applied for and started receiving his pension benefit of $502 a month from the Fund. In 2007, Melton started helping his son by allegedly working at Western Door and Gate, LLC.

On November 15, 2011, SMWIA sent the Fund a letter indicating that an eyewitness saw Melton "installing or working on kitchen equipment in Laughlin, NV." On November 16, 2011,

the Fund sent two letters to Melton. One letter indicated that the Fund Office had recently been notified that Melton was engaging in disqualifying employment since his retirement. Thus, the letter indicated, the Fund would suspend Melton's pension benefit effective December 1, 2011. The second letter stated that if Melton decided to appeal, he must do so in writing within 180 days of his receipt of the letter. Additionally, Melton needed to provide a signed authorization to obtain earnings data and provide a list of all employment since June 1, 2006. On November 28, 2011, Melton responded to that letter and requested that his benefits be reinstated.

In the meantime, on January 31, 2012, the SMWIA union held a trial and found Melton guilty of violating the SMWIA Constitution and Ritual. Melton was fined $332,430.78, of which $288,036.00 was suspended pending no further constitutional violations for 5 years. The remaining $44,394.78 was due within 6 months. Melton retained legal counsel to appeal the SMWIA decision. The appeal was filed with the SMWIA.[1]

On May 25, 2012, the Fund sent a letter to Melton stating that it would not reinstate his benefits because it had been determined that he was engaged in disqualifying employment with Western Door and Gate. The letter also stated that Melton was in violation of Article 1 Section 5(a) and 5(aa) of the SMWIA Constitution for working at Western Door and Gate and that the fund expected to recover $33,212.40 in payments received while he was engaged in disqualifying employment.

On August 1, 2012, Melton's counsel sent a letter to the Fund asking for its calculation of $33,212.40. On August 10, 2012, the Fund responded that the May 25, 2012, letter was intended to provide greater detail but was not a decision by the Board of Trustees' Appeal Committee, and that a decision would be rendered on October 29, 2012.

Melton received the Fund's decision on November 5, 2012, via letter. The letter indicated that Melton's employment met the definition of disqualifying employment, and therefore his early retirement pension was not payable. Melton's counsel sent correspondence to the Fund on December 3, 2012, and again on December 21, 2012.

---

[1]The Fund asserts that SMWIA is "an entity wholly separate from the Fund."

On December 11, 2012, Melton received the SMWIA decision from the SMWIA General President, Joseph Nigro. The decision indicated that Melton had committed several violations, but that SMWIA granted his appeal in part. The Fund Trustee, Joseph Sellers, was copied on the letter in his capacity as General Secretary Treasurer of the SMWIA.

On February 14, 2013, Melton filed this action. The Fund answered on March 4, 2013, and attached as Exhibit 3 what it believes should be the administrative record for the instant litigation. Melton has brought the present motion arguing that the December 11, 2012, decision and correspondence from SMWIA should be included in the record.

## DISCUSSION

### I. Motion to Admit One Document to the Administrative Record (#23)

#### A. Procedural Irregularity

Melton asserts that the December 11, 2012, decision by the SMWIA General President should be included in the Administrative Record because this case has an irregular procedural posture.[2] The Fund opposed this motion because, it asserts, Melton has not met his burden to show that evidence outside the administrative record can be considered.

The Court may consider evidence outside the administrative record if it determines that procedural irregularities prevented the full development of the administrative record. *Burke v. Pitney Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016, 1028 (9th Cir. 2008); *citing Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir.2006). The Court need only find "some evidence" of procedural irregularities to make this determination. *Id*. For example, the Court may find procedural irregularities exist if the plan's investigation was minimal or incomplete or the plan had no "meaningful dialogue" with the plaintiff. See *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872 (9th Cir. 2008); see also *Burke,* 544 F.3d at 1028 (finding there was a lack of meaningful dialog when the decision maker denied

---

[2]In Response, the Fund argues that there is no structural conflict of interest and, additionally, that no procedural irregularities occurred. Melton, however, only explicitly argues that there was an irregular procedural posture. He makes no clear argument concerning conflict of interest, and the Court does not infer from his briefing that he intended to make such an argument. Accordingly, the Court only addresses the procedural irregularities arguments and makes no findings concerning conflict of interest.

- 3 -

1   benefits for one reason and then denies on appeal for an entirely different, previously
2   undisclosed, reason).

3       Here, Melton argues that procedural irregularities exist in this case. In Response, the
4   Fund argues that Melton has not met his burden of showing any procedural irregularity.

5       Having reviewed the matter, the Court finds that some evidence of procedural irregularity
6   exists in Melton's appeal. First, one of the Fund's November 16, 2011, letters indicated that if
7   Melton wanted to appeal, he must do so in writing within 180 days. However, when Melton
8   responded to that letter and requested that his benefits be reinstated, the Fund did not respond for
9   over five months. When it did respond, it indicated that it had made a decision and it was based
10  on Melton's employment with Western Door & Garage.  According to the Fund, the delay was
11  justifiable because Melton's letter was not a formal appeal and thus it had no obligation to
12  respond. However, the Court has reviewed the Fund's original letter, and it clearly indicates that
13  Melton need only appeal in writing. Therefore, if the Fund did not consider Melton's letter an
14  appeal, it should have informed him of such.

15      Second, according to the Fund, the May 25, 2012, letter was not a final decision.
16  However, not only does the May 25, 2012, letter indicate that a decision has in fact been made, it
17  completely fails to mention that any further decisions would be forthcoming.[3] It was not until
18  August 10, 2012, that the Fund explained that the decision in the May 25, 2012, letter was not a
19  final decision. That explanation was in direct contrast to the Fund's November 16, 2011, letter
20  which states that its decisions are "final and binding."  Thus, from May until August, Melton's
21  case appeared to be concluded, which may have prevented Melton from providing additional
22  evidence to the Fund to defend his appeal. The Fund clearly failed to engage in a meaningful
23  dialogue with Melton.

24      Third, the May 25, 2012, letter was also the first time the Fund stated that Melton's
25  benefits had been suspended due to his affiliation with Western Door & Garage.  This was an

---

[3]The May 25, 2012, letter from the Fund to Melton states: "We have reviewed your request to re-instate your pension benefits in a letter dated November 28, 2011 and regret to inform you that you do not qualify as **we have determined** that you are currently engaged in Disqualifying Employment while employed with Western Door & Gate." (Emphasis added).

- 4 -

entirely different and previously undisclosed reason than that stated in the Fund's November 2011 decision to suspend Melton's benefits in December 2011. According to the November 2011 letters, Melton's benefits were suspended because Melton was allegedly installing or working on kitchen equipment. Therefore, prior to May 25, 2012, the Fund failed to inform Melton specifically why it had suspended his funds. Further, it was not until August 2012, that the Fund informed Melton that it had yet to make a final decision. Thus, from November 2011 to August 2012, Melton was denied the opportunity to adequately defend his association with Western Door & Garage.

Fourth, the letter Melton's attorney sent on August 1, 2012, requested a calculation of the $33,212.40 that the Fund indicated it expected to recover. However, Melton represents that the Fund failed to provide that information.

Finally, the SMWIA decision indicates that Melton should be fined for 1 day of disqualifying employment. The Fund, on the other hand, seeks to recover $33,212.40 in improperly paid benefits. While this is not a procedural irregularity, the disparity between the two findings supports the conclusion that the administrative record was not fully developed. Thus, because some evidence of procedural irregularity exists, the Court can consider evidence outside the administrative record that is absent from that record due to the procedural irregularity.

**B.    Decision by the SMWIA General President**

Melton argues that the Court can review the final decision by the SMWIA General President because it indicates "how out of line [the Fund's] decision is in regards to the SMWIA's constitution." The Fund argues that the SMWIA final decision should not be included because it is dated December 11, 2012, and the administrative review process concluded on November 5, 2012. Therefore, according to the Fund, the SMWIA decision is not a part of the administrative record due to the timing of the decision and, therefore, cannot be the result of procedural irregularity.

The Fund is correct. None of the procedural irregularities discussed above appear to be the reason that the SMWIA decision was not considered by the Fund. Rather, the SMWIA decision did not exist until over a month after the Fund made its decision. Furthermore, Melton's

argument that the decision should be included because it helps his position and hurts the Fund's position is not sufficient to show that the decision would have been included had it not been for the procedural irregularities. Accordingly, because Melton's request in the instant motion was for the Court to admit this one document, his motion is denied.

**II.    Motion to Open Limited Discovery to Authenticate Two Notices Issued by Defendant (#25)**

Melton seeks to open limited discovery in order to authenticate two notices from the Defendant's website. In Response, the Fund argues that this request is a "red herring" because the documents "can be found on the Fund's website" and "can be authenticated as true and accurate copies."  In Reply, Melton argues that he is not seeking for the Fund to agree that the documents are relevant or that they should be considered by the Court. Melton states that he merely wants discovery opened so that he can authenticate the notices.

Having reviewed the matter, the Court finds that opening discovery is not necessary. The Fund has indicated that the documents are indeed what Melton claims them to be and thus, there is no need to open discovery.

**CONCLUSION**

Based on the foregoing, and good cause appearing therefore,

IT IS HEREBY ORDERED that Plaintiff's Motion to Admit One Document to the Administrative Record (#23) is DENIED.

IT IS FURTHER ORDERED that the Plaintiff's Motion to Open Limited Discovery to Authenticate Two Notices Issued by Defendant (#25) is DENIED.

DATED this   27th   day of June, 2013

_____
NANCY J. KOPPE
United States Magistrate Judge